STATE of Missouri, Respondent,

v.

**Paul EYMAN, Appellant.**

No. WD 43585.

Missouri Court of Appeals, Western District.

Feb. 4, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 1992.

Application to Transfer Denied June 2, 1992.

---

T. Jefferson Stephens, Stephens and Drake, Grant City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BERREY, P.J., and ULRICH and BRECKENRIDGE, JJ.

ULRICH, Judge.

Paul Eyman appeals his conviction for possession of cocaine, § 195.020.1, RSMo 1986 (repealed). He was charged by indictment, convicted in a court-tried case,[1] and sentenced to three years incarceration in the custody of the Missouri Department of Corrections. Mr. Eyman contends that the trial court erred in (1) overruling his motion to suppress his grand jury testimony and permitting introduction of the testimony at trial and (2) in overruling his motion for judgment of acquittal because, he claims, the evidence was insufficient to establish that he possessed cocaine. The judgment of conviction is reversed.

Paul Eyman was a senior at Tarkio High School when he was served a subpoena to appear before the Atchison County grand jury on January 31, 1990. He was immediately arrested by law enforcement officers, handcuffed, and taken to the grand jury to testify. He was a target of the grand jury investigation. Mr. Eyman was not advised of his constitutional rights pursuant to the fifth, sixth, and fourteenth amendments to the United States Constitution as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He was compelled by law enforcement authorities to testify before the grand jury about events pertaining to a party on August 26, 1989, where he purportedly used cocaine. He was not given the opportunity to consult an attorney before he testified. When

---

**1.** Mr. Eyman waived his right to a jury trial and consented to the trial court's determining the questions of fact.

Mr. Eyman testified before the grand jury, the prosecuting attorney, the prosecutor's secretary, a court reporter, the sheriff, and a deputy sheriff were all present in the grand jury room. Neither Mr. Eyman nor the prosecuting attorney dispute these facts.

Mr. Eyman was subsequently indicted by the grand jury before which he testified. He was charged with violating § 195.020, possession of cocaine. Prior to trial, Mr. Eyman moved to suppress his testimony before the grand jury. Mr. Eyman contended that his rights pursuant to the fifth, sixth, and fourteenth amendments to the United States Constitution and Article I, § 19 of the Missouri Constitution were breached and that he was not advised of his federal constitutional rights as required by *Miranda*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The trial court overruled the motion to suppress.

At trial, Kevin Hicks was the state's single fact witness. He was also the state's only expert witness to testify that the substance at the party was cocaine. The trial court permitted the prosecutor to treat Mr. Hicks as a hostile witness. Like Mr. Eyman, Mr. Hicks was a senior at Tarkio High School. He had known Mr. Eyman since they had been in the second grade and was with Mr. Eyman on the evening of August 26, 1989. Mr. Hicks drove Mr. Eyman and another person to a party in Phelps City. Another person at the party presented a white substance as cocaine.

The essential part of Mr. Hicks' testimony consisted of numerous inconsistent and conflicting statements. He stated that he observed Mr. Eyman use cocaine at the party on August 26. He then said he did not observe Mr. Eyman use cocaine. He stated he did not know whether the white substance was cocaine. Mr. Hicks said that he was not certain Mr. Eyman had used the substance, but that he probably had used it. Mr. Hicks explained that he had drunk seven or eight beers the evening of the party and that he was intoxicated. He further stated that he did not see Mr. Eyman use any of the white substance, but

said, "I could hear it." Mr. Hicks stated fifteen people were in the area and that perhaps seven were in the vicinity of the white powder, which was on a mirror. Mr. Hicks testified that he, himself, used the white powder and that he did not experience the same result he had experienced when he previously used cocaine. Mr. Hicks stated that he had used cocaine at least five times before he testified at trial.

The state called two additional witnesses. The prosecuting attorney introduced the transcript of Mr. Eyman's incriminating grand jury testimony through the testimony of the reporter who was present when Mr. Eyman testified before the grand jury. The foreman of the grand jury also testified that the transcript offered at trial was a correct transcript of Mr. Eyman's grand jury testimony. Neither the prosecuting attorney nor Mr. Eyman called additional witnesses. The trial court overruled Mr. Eyman's motions for acquittal and found Mr. Eyman guilty of possessing cocaine.

■ Mr. Eyman contends, as point 1, that the trial court erred by overruling his motion to suppress his grand jury testimony and by permitting its introduction because he was not advised of certain of his constitutional rights as required by *Miranda* before he testified. The right against self-incrimination under Article I, § 19 of the Missouri Constitution and the fifth and fourteenth amendments to the United States Constitution precludes the state from compelling a person to provide testimony that may tend to incriminate himself. Since 1966, law enforcement officers are required to inform persons arrested of the right not to be compelled by governmental authorities to incriminate one's self and the right to counsel provided in the fifth, sixth and fourteenth amendments to the United States Constitution. *Miranda*, 384 U.S. at 444–45, 86 S.Ct. at 1612–13. *Miranda* attempts to eradicate custodial coercive circumstances that intimidate or otherwise erode the accused's free will to choose whether he will assert his constitutional rights to counsel and remain silent or waive these rights and speak to the state, which may seek his prosecution

and conviction. *Id.* The state acknowledges that Mr. Eyman was served a subpoena, immediately arrested, and taken to the grand jury to testify. Despite the pervasive awareness among the populace that *Miranda* imposes on law enforcement officers the duty to inform the accused in custody of these rights, Mr. Eyman was not advised of his rights detailed in *Miranda*. *Id.* Additionally, although in custody, he was not given the opportunity to consult legal counsel, was taken to the county grand jury, and was compelled to testify. His grand jury testimony was incriminating.

Few circumstances not involving physical abuse could present a more heinous violation of the accused's fifth, sixth, and fourteenth amendment rights and his rights guaranteed by Article I, § 19 of the Missouri Constitution than those in the present appeal. Mr. Eyman was served a subpoena and arrested, not to compel his appearance before a judicial officer on charges that he committed a crime, but for the purpose of taking him to the grand jury to compel his testimony. Mr. Eyman was handcuffed and transported by law enforcement officers to the grand jury where he remained in custody and was compelled to testify not only before the twelve member grand jury, but also before the prosecuting attorney, the prosecuting attorney's secretary, the county sheriff, and a sheriff's deputy who were in attendance with the grand jury, all without the benefit of counsel's advice. The facts presented here are repugnant to Americans, who, when they observe similar events in other, less democratic societies, call them anathema and condemn the authorities and systems that permit their occurrence.

Mr. Eyman's custodial and involuntary testimony before the grand jury was incriminating, prejudicial, and should have been suppressed on Mr. Eyman's motion. The introduction of the testimony was error. *Id.* Point 1 is sustained.

■ Mr. Eyman, as point 2, contends that insufficient evidence was introduced to sustain his conviction. With the suppression of Mr. Eyman's grand jury testimony, the testimony of Kevin Hicks is the only remaining evidence. Thus, the state must rely on Mr. Hicks' testimony to prove Mr. Eyman's guilt beyond a reasonable doubt. On appeal, this court does not reweigh the evidence but, instead, determines if the state produced sufficient evidence to allow a reasonable person to conclude that the defendant is guilty of the crime with which he is charged. *State v. Vitale*, 801 S.W.2d 451, 456 (Mo.App.1990). Mr. Hicks' testimony must be sufficient to prove beyond a reasonable doubt that the substance present at the party was cocaine and that Mr. Eyman possessed it, the essential elements of the offense proscribed by § 195.-020.1. *Id.*

■ Proof that a substance is a contraband drug does not always require expert testimony, *State v. Neal*, 624 S.W.2d 182, 183–84 (Mo.App.1981), but the proof must be sufficient to support a finding by the trier of fact that the substance was the charged contraband beyond a reasonable doubt. *Vitale*, 801 S.W.2d at 456. *Neal* requires that the witness must have considerable experience with the substance to sufficiently identify its nature. 624 S.W.2d at 183–84. In *Neal*, the witness testified that he had smoked ten to twelve marijuana cigarettes daily and had made as many as a hundred sales of marijuana. *Id.* at 183. This substantial experience with drugs qualified the witness to testify about the identity of a substance in question. *Id.*

Mr. Hicks' testimony as the state's sole expert witness must be competent to prove that the white substance at the party was cocaine. Mr. Hicks was not qualified as an expert by education or training. His expertise depended on his experience as a cocaine user. He testified that he had used cocaine at least five but not more than ten times previously. Thus, Mr. Hicks' expert testimony was based on the comparative effect the substance he used at the August 26 party had on his body and the effect he had experienced using cocaine prior to his trial testimony. Even if Mr. Hicks' experience using cocaine qualified him to testify whether the substance at the August 26 party was cocaine, an issue not specifically

addressed in this opinion, Mr. Hicks testified that the substance he used the evening of August 26 did not affect his body the same way that his body had been affected when he had previously used cocaine. Mr. Hicks' senses were inhibited while he attended the party, and his ability to determine whether the substance was cocaine may have been affected. He confessed to drinking seven or eight beers and to being intoxicated during the events about which he testified. Unlike the witness in *Neal,* Mr. Hicks' experience with the substance at the August 26 party was not sufficient enough for a reasonable person to conclude that the substance was, beyond a reasonable doubt, cocaine. The state failed to present evidence from which the trier of fact could find beyond a reasonable doubt that the substance at the party on August 26 was cocaine, an essential element of the offense charged. Without substantial evidence supporting an essential element of the charge, the state's case must fail, and the case cannot be remanded for new trial without violating Mr. Eyman's constitutional right against being placed in jeopardy twice for the same alleged offense. *Burlington v. Missouri,* 451 U.S. 430, 442, 101 S.Ct. 1852, 1860, 68 L.Ed.2d 270, *remand to* 618 S.W.2d 671 (Mo. banc. 1981).

■ Additionally, the case fails if Mr. Hicks' trial statements regarding material matters are so inconsistent with each other that his testimony loses its probative value and cannot be considered. *Vitale,* 801 S.W.2d at 456. The credibility and the weight given trial testimony of witnesses is determined by the trier of fact. *Herbert v. Harl,* 757 S.W.2d 585, 587 (Mo. banc 1988); *Roark Motor Lodge I. Sales v. Lindner,* 779 S.W.2d 684, 686 (Mo.App.1989). However, the doctrine of "destructive testimony," also known as the doctrine of "destructive contradictions," provides that when a witness's inconsistent and contradicting statements at trial are so diametrically opposed to one another as to preclude reliance thereon and rob the testimony of all probative force, his testimony loses probative value. *State v. Rodney,* 760 S.W.2d 500, 503 (Mo.App.1988); *State v. Burns,*

671 S.W.2d 306, 311 (Mo.App.1984). Because the state failed to prove beyond a reasonable doubt that the substance allegedly possessed by Mr. Eyman was cocaine, whether Mr. Hicks' trial testimony regarding events that occurred on August 26 is so self conflicting and inconsistent that as a matter of law it is devoid of probative value need not be addressed. Point 2 is sustained.

■ Although the failure to prove that the substance at the party on August 26 was cocaine is dispositive, and although Mr. Eyman did not contest the unauthorized presence of persons as the grand jury conducted business, the presence of the sheriff, a deputy sheriff, and the prosecutor's secretary with the grand jury when it investigated the events of August 26 requires comment. Among the grand jury's functions is the duty to determine whether probable cause exists that a crime has been committed, and that a particular person or persons committed the crime. When probable cause has been shown, the grand jury's duties include returning an indictment charging the alleged violators. *See* § 540.031, RSMo Supp.1990.

Grand jury proceedings are conducted in secrecy. *State v. McGee,* 757 S.W.2d 321, 325 (Mo.App.1988) (citing § 540.080, RSMo 1986). *See also* §§ 540.105; 110; .120; .150; .320, RSMo Supp.1990. The presence of persons other than grand jury members when the grand jury is performing its duties is restricted by statute. *McGee,* 757 S.W.2d at 325. The prosecuting attorney (§§ 540.130, .140, RSMo Supp.1990), a court reporter, if needed (§ 540.105), and an interpreter, if necessary (§ 540.150), are authorized to be present when a witness is examined before the grand jury. Only grand jurors are permitted to be present during the expression of their opinions or the giving of their votes on any matter before them. § 546.140. Not only are grand jury members, interpreters and court reporters sworn to secrecy, witnesses who appear before grand juries are also sworn to secrecy in Missouri.

§ 540.110.[2]  Breach of one's oath of secrecy is a misdemeanor.  §§ 540.120, .320.

The presence of an unauthorized person in the presence of a grand jury when it conducts business has resulted in dismissal of the indictment.  *State v. Salmon*, 216 Mo. 466, 115 S.W. 1106 (1909).  The court in *Salmon* said:

> We are convinced that the only way to enforce a strict compliance with the provisions of the law regarding the secrecy and deliberations of the grand jury, and to maintain the usefulness as well as the respect for the result of their investigations, is to abate indictments returned by them where the spirit of the law regulating their proceedings in finding such indictments have been absolutely disregarded....  This law should be complied with, and it should not be left to the courts to conjecture whether or not harm was done to persons accused or suspicioned of crime whose acts are being investigated before that body.

*Id.* at 1122.

The Supreme Court of the United States summarized the reasons for safeguarding the confidentiality of the grand jury process, saying:

> (1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses ...; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [an] innocent accused who is exonerated....

*United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958) (citation omitted).

The presence of the county sheriff, a deputy sheriff, and the prosecutor's secretary breached the secrecy requirement imposed by law on the grand jury process. These persons were not appearing as witnesses, and their appearance together, at the same time, would have been improper had they been witnesses.  The presence of these unauthorized persons with the grand jury as it performed its duties by examining a witness violated secrecy requirements of the law.

The judgment of conviction is reversed.

All concur.

---

**2.**  The federal system imposes the obligation of secrecy on all participants in the grand jury process except, unlike Missouri's system, witnesses.  *Compare* Fed.R.Crim.P.  6(e)(2) *with* § 540.110.